IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JAVIER HERRERA,  Plaintiff,  v.  KWAME RAOUL et al.,  Defendants. | No. 23 CV 532  Hon. Lindsay C. Jenkins |

**MOTION BY STATE AND CITY DEFENDANTS TO STAY THE LITIGATION
PENDING THE SEVENTH CIRCUIT'S DECISION IN *BARNETT V. RAOUL***

The State Defendants (Attorney General Kwame Raoul and Illinois State Police Director Brendan Kelly) and the City Defendants (City of Chicago and Chicago Police Department Superintendent Larry B. Snelling) respectfully move to stay this litigation pending the Seventh Circuit's resolution of *Barnett v. Raoul*, No. 24-3060, stating as follows:

**Introduction**

In *Barnett v. Raoul*, No. 24-3060, the Court of Appeals for the Seventh Circuit is poised to decide the legal and factual questions at the heart of this case: whether the assault weapons and large capacity magazines that Plaintiff owns are "Arms" within the meaning of the Second Amendment, and whether there is a history and tradition supporting the regulations Plaintiff is challenging. The Seventh Circuit has already made clear that its resolution of *Barnett* will control the outcome of this case. Ex. 1 at 2 (Order Staying District Court Judgment in *Barnett v. Raoul*, No. 24-3060 (7th Cir.), ECF 22) (noting that this case and *Barnett* "must be resolved the same way").

The State and City Defendants ask that the Court exercise its inherent power to stay the litigation until the Seventh Circuit issues its ruling. Litigating this case to a final judgment would

place an extensive and unnecessary burden on the time and resources of the parties and the Court. *See United States v. Rahimi*, 602 U.S. 680, 743 & n.1 (2024) (Jackson, J., concurring) (collecting state and federal court decisions describing the complexity and burden of deciding Second Amendment cases under *New York State Pistol & Rifle Ass'n v. Bruen*, 597 U.S. 1 (2022)). And a stay will not prejudice any of the litigants, who do not stand to benefit from pursuing a final judgment in this Court before the Seventh Circuit issues binding precedent on the same questions at issue in this case. Instead, a stay will spare unnecessary expense and drastically narrow the remaining issues in dispute, if not eliminate the need for further litigation altogether. Allowing the Seventh Circuit to first adjudicate *Barnett* will therefore avoid undue hardship on all parties and promote judicial economy.

**Background**

In January 2023, Plaintiff filed this lawsuit challenging regulations of assault weapons and large capacity magazines enacted by the State of Illinois, Cook County, and the City of Chicago. ECF 1.[1] Each of the challenged regulations restricts the possession and sale of firearms classified as assault weapons, as well as ammunition-feeding devices classified as large capacity magazines. *See* 720 ILCS 5/24-1.9, 5/24-1.10; Cook Co. Code of Ord. § 54-211, § 54-212; Chi. Muni. Code § 8-20-075, § 8-20-085. Plaintiff contends that these regulations violate his Second Amendment rights, and he seeks relief that would allow him to continue possessing specific firearms and magazines in his home for self-defense. Am. Compl. (ECF 103) at 27–34.

This case is just one of many in Illinois federal courts in which plaintiffs have raised the same challenges to the same regulations. *See Bevis v. City of Naperville*, 22-cv-4775 (N.D. Ill.);

---

[1] In this motion, citations to the docket in this case use only the abbreviation "ECF" followed by the docket number. Citations to the district-court dockets in the other pending assault-weapons litigation are preceded by the italicized, shortened case name (e.g., "*Bevis* ECF 63").

*Viramontes v. Cook County*, No. 21-cv-4595 (N.D. Ill.); *Barnett v. Raoul*, 3:23-cv-209 (S.D. Ill.); *Harrel v. Raoul*, No. 3:23-cv-141 (S.D. Ill.); *Langley v. Kelly*, No. 3:23-cv-192 (S.D. Ill.); *Federal Firearms Licensees of Ill. v. Pritzker*, 3:23-cv-215 (S.D. Ill.). The four Southern District cases are consolidated under *Barnett* as the lead case.

Shortly after the Protect Illinois Communities Act (PICA) went into effect, the plaintiffs in *Bevis, Herrera*, and *Barnett* filed motions for preliminary injunctions. This Court and the court in *Bevis* denied those motions, while the district judge in the Southern District entered an injunction. ECF 75; *Bevis* ECF 63; *Barnett* ECF 101. The Seventh Circuit consolidated the appeals from these rulings, vacated the Southern District's preliminary injunction, and held that none of the plaintiffs had shown a likelihood of success on the merits. *See Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023). Specifically, the court found that plaintiffs were unlikely to prevail on their claims that the regulated items are "Arms" protected by the text of the Second Amendment under the first step of the *Bruen* analysis. *Id.* at 1192–97. The court also held that the challenged provisions were supported by a history and tradition of similar regulations, including laws that reserved especially dangerous weapons for use only by the military and law enforcement. *Id.* at 1201.

Following *Bevis*, the cases that had been consolidated on appeal took divergent paths. In both Northern District cases, the litigation remained on hold while the various plaintiffs pursued certiorari in the United States Supreme Court. *See* ECF 93; *Bevis* ECF 92. After that petition was denied in July 2024, *see* ECF 96, Plaintiff in this case sought leave to file an amended complaint, ECF 101. The Court then entered a fact discovery deadline of February 26, 2025. ECF 106. The current fact discovery deadline is April 2, 2025. ECF 117. *Bevis* has generally followed a similar trajectory, with a current fact discovery deadline set for April 2025. *Bevis* ECF 105.

3

In *Barnett*, by contrast, Judge McGlynn declined to stay matters pending the certiorari petitions. Instead, he fast-tracked the litigation, requiring the parties to conduct extensive fact and expert discovery in a period of just six months. *See Barnett* ECF 169, 179, 189, 195. Despite efforts to streamline discovery to accommodate the accelerated case schedule, the litigation nonetheless proved extraordinarily complex and resource-intensive. All told, the parties produced nearly 24,000 pages of documents; took 10 depositions (notwithstanding a stipulation to significantly curtail oral discovery); and disclosed 26 expert witnesses who submitted 24 reports (including opening and rebuttal reports). The Court then held a bench trial in September 2024, in which the parties called several witnesses from each side to present parts of their case, while the remaining evidence was submitted in writing after trial. In October 2024, the parties filed written findings of fact and conclusions of law. Each side was afforded just one set of submissions (with no responses or replies allowed), which totaled 330 pages. Finally, on November 8, 2024, Judge McGlynn issued a 168-page memorandum opinion and order in favor of the plaintiffs and entered final judgment. *Barnett* ECF 258 & 259.[2]

The State Defendants appealed. On December 5, 2024, the Seventh Circuit entered a stay of the district court's permanent injunction, noting that it "already has held that the laws in question survive motions seeking preliminary injunctions" and citing the consensus among federal Courts of Appeal that similar legislation is constitutional under *Bruen*. Ex. 1 at 2. The court also explained that its decision in *Barnett* will determine the constitutionality of PICA as challenged in both this case and *Bevis*:

> [a]t least two other essentially identical suits are pending in other district courts within the Seventh Circuit. The three suits were addressed jointly in *Bevis*, and they must be resolved the same way eventually. (The state laws cannot be valid in some parts of Illinois and invalid elsewhere.) This does not necessarily imply that the

---

[2] After the Seventh Circuit identified deficiencies in the district court's judgment, Judge McGlynn entered an amended judgment on December 9, 2024. *Barnett* ECF 272.

three cases will again be consolidated on appeal; we are reluctant to delay disposition of this appeal indefinitely just because similar litigation is pending in other districts.

*Id.*

In this case, on February 12, 2025, the parties submitted a joint status report noting that all parties except the County Defendants agreed that the litigation should be stayed in light of the pending appeal. ECF 116 at 2. Plaintiff joined the request for a stay, which explained that "the Seventh Circuit's decision will significantly impact the resolution of Plaintiff's claims in this court" and that "the decision in *Barnett* could obviate the need for further or extended discovery." *Id.* For these reasons, the three parties seeking the stay agreed that "[j]udicial economy . . . counsels in favor of a stay of discovery." In a minute entry, the Court declined these parties' request to stay fact discovery but extended the fact discovery deadline to April 2, 2025. ECF 117. Since then, all parties have worked diligently to complete discovery, exchanging additional written discovery requests and responses, conferring to resolve disputes, and conducting Plaintiff's deposition.

On March 26, 2025, counsel for all parties participated in a telephonic conference in which State Defendants renewed the proposal to stay this litigation pending the Seventh Circuit's ruling. The parties conferred in good faith but were unable to reach agreement. Following the parties' conferral, the parties' positions are as follows: the City Defendants join this motion; the County Defendants take no position on the motion; and Plaintiff now opposes the motion. The parties have agreed to a briefing schedule requiring Plaintiff to file a response on or before April 17, 2025.

**Legal Standard**

District courts have the inherent power to stay proceedings before them. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019). In determining whether to enter a stay, a court should consider "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the

5

parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Bell v. SDH Servs. W., LLC*, No. 20 C 3181, 2020 WL 9812014, at *1 (N.D. Ill. Aug. 27, 2020) (quoting *Berkeley*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2019 WL 1077124, at *5 (N.D. Ill. Mar. 7, 2019)). A stay is particularly appropriate when the court will be bound by another court's resolution of the same legal or factual issues. *See Bell*, 2020 WL 9812014, at *2 (granting a stay because "the Illinois Appellate Court's decisions . . . could control the Court's resolution"); *see also Vaughan v. Biomat USA, Inc.*, No. 1:20 CV 04241, 2020 WL 6262359, at *2 (N.D. Ill. Oct. 23, 2020); *Frey v. Nigrelli*, 661 F. Supp. 3d 176, 200 (S.D.N.Y. 2023) (staying litigation challenging New York's assault weapons ban because the statute's constitutionality was "currently being reviewed by the Second Circuit").

## Argument

The Seventh Circuit's decision *Barnett* will likely resolve the issues at the heart of Plaintiff's claims. A temporary stay of the litigation will therefore avoid unnecessary, costly litigation to resolve complex factual and constitutional questions. Plaintiff himself acknowledged in a recent joint submission that "[t]he questions presented in *Barnett* overlap significantly with Plaintiff's claims," and that "the decision in *Barnett* could obviate the need for further or extended discovery in this case." ECF 116 (Joint Status Report of February 12, 2025) at 2. And because the Seventh Circuit has made clear that it will preserve the status quo pending its decision in *Barnett*, no party will suffer prejudice if this Court defers full adjudication on the merits until after the Seventh Circuit issues its decision.

### A. The *Barnett* appeal will decide the essential issues in this case

The State Defendants' appeal of the district court's judgment in *Barnett* squarely presents the legal and factual questions central to this lawsuit. In his opinion, Judge McGlynn addressed

whether the firearms and magazines regulated by PICA are "Arms" within the meaning of the Second Amendment (*Barnett* ECF 258 at 100); whether weapons like the AR-15 and the AK-47 are predominantly useful in military service (*id.* at 107); and whether restrictions on assault weapons are supported by a history and tradition of comparable regulations (*id.* at 149). These same questions form the basis of Plaintiff's claims in this case. *See, e.g.*, Am. Compl., ECF 103 ¶ 144 ("Semiautomatic rifles such as the AR-15 are 'arms' within the meaning of the Second Amendment."); ¶ 145 ("AR-15 rifles are not military rifles . . . They are civilian rifles intended for civilian use."); ¶ 107 ("[R]ifle and magazine bans have no historical pedigree."). Indeed, Plaintiff *must* prevail on each of these issues in order to succeed on his Second Amendment challenge. *See Bruen*, 597 U.S. at 24; *Bevis*, 85 F.4th at 1192.

The Seventh Circuit's decision in the *Barnett* appeal is likely to decide the same issues that underpin Plaintiff's claims. *See* Ex. 1 at 2 ("The three suits . . . addressed jointly in *Bevis* . . . must be resolved the same way eventually."). Moreover, *Barnett* presents these core questions in light of a substantial evidentiary record developed in the trial court, described above at pages 3–4. Under these circumstances, a stay is appropriate to await a disposition from the Court of Appeals and avoid unnecessary, wasteful, and inefficient litigation. *See, e.g.*, *Obrzut v. LVNV Funding, LLC*, No. 19-CV-01780, 2020 WL 3055958, at *2 (N.D. Ill. June 8, 2020) (noting the typical practice in the Northern District of "stay[ing] litigation while awaiting the resolution of appeals that could affect even some claims"); *Dawoudi v. Nationstar Mortg., LLC*, No. 16-CV-2356, 2016 WL 8711604, at *2 (N.D. Ill. Sept. 16, 2016) (granting a stay of the litigation where an anticipated Seventh Circuit ruling would be either "instructive" or "dispositive"); *Banos v. City of Chicago*, No. 98 C 7629, 2002 WL 31870152, at *1 (N.D. Ill. Dec. 17, 2002) (staying the case because "a pending appeal may alter the legal landscape of the issues involved in this matter"); *Roberson v.*

*Maestro Consulting Servs. LLC*, No. 20-CV-00895-NJR, 2021 WL 1017127, at *2 (S.D. Ill. Mar. 17, 2021) (granting a stay pending the disposition of a separate appeal because "the Seventh Circuit's decision could guide the parties' positions in this litigation").

Plaintiff may seek to distinguish his claims from those in *Barnett* by suggesting that his case involves unique legal theories or factual circumstances. Not so. The Seventh Circuit has already signaled that its *Barnett* ruling will determine the legality of the regulations challenged in this case. *See* Ex. 1 at 2. And, far from bringing distinctive claims, Plaintiff simply wishes to acquire and keep certain firearms and magazines in his home for self-defense. *See* Ex. 2 (Plaintiff's Amended Responses to State Defs.' Interrogatories) at 12–13 (stating in interrogatory response that he is injured by PICA because it "bans [him] from keeping firearms at home for self-defense"). This is the exact theory of injury that the Seventh Circuit will adjudicate in the *Barnett* appeal. *See Barnett* ECF 253 (Pls.' Proposed Findings of Fact & Conclusions of Law) at 13–15, 58 (contending that PICA violates the Second Amendment by restricting firearms and magazines used for home self-defense). But even assuming that case-specific issues remain to be resolved following the Seventh Circuit's ruling, a stay will allow the parties to address just those issues—not the much broader questions underpinning Plaintiff's claims—and to develop positions properly informed by *Barnett*'s reasoning. As a result, even if the Seventh Circuit's decision were to leave certain questions unresolved, a stay will dramatically reduce the scope and cost of this litigation.

**B. Continuing to litigate this case would be time-consuming and costly for the parties and the Court**

In light of the pending appeal, litigating this case now to a final judgment would impose unjustifiable costs. The *Bruen* analysis can require the parties and the Court to expend significant resources in expert discovery to resolve Second Amendment claims. *See United States v. Rahimi*, 602 U.S. 680, 743 & n.1 (2024) (Jackson, J., concurring). The second step of *Bruen* alone may

8

"saddl[e]" district courts "with a Ph.D.-level historical inquiry." *Atkinson v. Garland*, 70 F.4th 1018, 1025 (7th Cir. 2023) (Wood, J., dissenting). In this case, the parties and the Court must also grapple with the question of whether the regulated items are "Arms" under the Second Amendment at *Bruen*'s first step—an inquiry that introduces further factual and legal complexity. *See, e.g.*, *Bevis*, 85 F.4th at 1175, 1192–97; *Barnett* ECF 258 at 9–118.

Resolving these questions represents a resource-intensive aspect of this litigation. At the preliminary-injunction stage of this case alone, the parties collectively submitted more than 20 declarations. *See* ECF 52, 60, 61-1, 63. Proceeding with expert discovery will require updating and supplementing their initial reports, submitting rebuttal reports, conducting depositions, issuing additional written discovery if needed, and contesting admissibility under *Daubert* and Rule 702. Briefing and/or a trial to reach a final judgment will impose similar burdens. In *Barnett*, in addition to conducting a bench trial, the parties submitted lengthy post-trial briefs that included more than 800 numbered paragraphs constituting the parties' competing proposed findings of fact. *See Barnett* ECF 247, 253.

The State and City Defendants cannot agree to forego any of these steps if this case is not stayed and proceeds toward final judgment. Defendants are obligated to present a complete factual record, not least because they bear the burden of proof with respect to some of the disputed issues. *See Bevis*, 85 F.4th at 1192. Defendants are also responsible for contesting Plaintiff's proffered evidence, including by challenging the sufficiency or reliability of any reports, studies, or surveys on which he intends to rely. *See, e.g.*, *Barnett* ECF 257 at 16, 22 (declining to consider secondary-source materials that the defendants showed contained "methodological errors and inherent biases"); *see also* Am. Compl., ECF 103, ¶¶ 99–100 (citing the same sources). And even if the parties could somehow stipulate to reduce their own burden in discovery, that would do nothing to

9

alleviate the burden on the Court, which would have to consider the parties' submissions. The State and City Defendants believe that it would be improper and wasteful to ask this Court to adjudicate complex and pressing questions of constitutional law without preparing a complete evidentiary record. *See Bevis*, 85 F.4th at 1197 (remanding this case to develop a complete factual record on disputed issues). For example, the plaintiff in *Viramontes* recently attempted to short-circuit the discovery process in the district court. During the oral argument on appeal, judges on the Seventh Circuit panel expressed concerns about the plaintiff's failure to properly develop the district court record. Recording of Oral Argument in *Viramontes v. Cook County*, No. 24-1437 (7th Cir.) (Nov. 12, 2024), at 1:15–2:11; 2:46–4:21; 4:40–4:54 (https://media.ca7.uscourts.gov/sound/2024/ch.24-1437.24-1437_11_12_2024.mp3).

**C.     A stay will not prejudice any party**

Staying the litigation will not delay resolution of the merits or adversely affect any party. As discussed above, *Barnett* will decide the essential questions in this case, and any issues that remain for this Court to decide—if any—will be limited in scope. The parties can expeditiously address those questions in legal briefs and proceed to final judgment without additional burdensome discovery into the complex factual questions that *Barnett* is already poised to decide. Moreover, even if Plaintiff could show some possibility that staying the proceedings would increase the total time needed to reach final judgment, "[d]elay alone is not enough to tip the balance or to constitute unfair prejudice." *Gamon Plus, Inc. v. Campbell Soup Co.*, No. 15-CV-8940, 2018 WL 11471814, at *2 (N.D. Ill. Nov. 29, 2018) (quoting *Riddell, Inc. v. Kranos Corp.*, No. 16 C 4496, 2017 WL 959019, at *2 (N.D. Ill. 2017)).

In addition, a stay would not impair any party's rights or ability to obtain relief. In staying the district court's injunction pending appeal, the Seventh Circuit chose to leave PICA in effect

10

while it considers *Barnett*, *see* Ex. 1 at 2, meaning that the challenged regulations of assault weapons and large capacity magazines will remain in place until the *Barnett* appeal is decided. Thus, even if the parties litigated this case to a final judgment and Plaintiff prevailed on his claims for declaratory or injunctive relief, he would realize no actual benefit from the litigation unless and until the *Barnett* appeal is resolved in the plaintiffs' favor. As a result, there is no advantage to Plaintiff in continuing to litigate this case, and any purported benefit to proceeding with this litigation cannot outweigh the harm to the State and City Defendants of being subjected "to a considerable hardship—having to defend [themselves] against claims that might have been resolved," while "risk[ing] having this court and the parties expend considerable time and effort on a suit that could prove entirely fruitless." *Freed v. Friedman*, 215 F. Supp. 3d 642, 658 (N.D. Ill. 2016).

## Conclusion

The next steps in this litigation—expert discovery, discovery motion practice, dispositive motions, and possibly a hearing or trial—will require the parties and the Court to shoulder the burden of resolving complex questions of fact and constitutional law. Both legally and practically, no party stands to benefit from litigating these issues to a final adjudication while the Seventh Circuit resolves identical issues in a pending appeal whose outcome will bind this Court. A stay of the litigation will serve the interests of the parties and the Court and will promote an efficient, expeditious resolution to this case.

Accordingly, the State and City Defendants respectfully request that this Court enter an order staying further litigation in this case pending the Seventh Circuit's resolution of *Barnett v. Raoul*, No. 24-3060.

Dated: April 1, 2025            Respectfully submitted,

                                             /s/ John Hazinski
                                             Christopher G. Wells
                                             John Hazinski
                                             Michael Tresnowski
                                             Office of the Illinois Attorney General
                                             115 S. LaSalle St.
                                             Chicago, IL 60603
                                             (773) 590-6944
                                             John.Hazinski@ilag.gov
                                             *Counsel for Attorney General Raoul*
                                             *and ISP Director Kelly*

                                             Andrew W. Worseck
                                             Whitney Woodward
                                             Emily A. Vernon
                                             City of Chicago, Department of Law
                                             Constitutional and Commercial Litigation Division
                                             2 N. LaSalle St., Suite 520
                                             Chicago, IL 60602
                                             (312) 744-7129 / 742-0260 / 744-4439

                                             *Counsel for Defendants City of Chicago and*
                                             *Superintendent Larry B. Snelling*